[Docket No. 59.]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

GLENN KING,

    Plaintiff,

v.

VERIZON NEW JERSEY INC., et al.,

    Defendants.

Civil No. 21-11226 (RMB) (MJS)

**OPINION**

**RENÉE MARIE BUMB, Chief United States District Judge:**

    Defendant Verizon New Jersey Inc. (Verizon) moves for summary judgment, asking the Court to enter judgment on *pro se* Plaintiff Glenn King's (King) claims under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.*, and the Fair Credit Reporting Act, (FCRA), 15 U.S.C. § 1681 *et seq.*, and his state-law claims for breach of contract and harassment (Docket No. 59).  Verizon contends those federal claims fail either because the statute is inapplicable here, or King has no evidence Verizon violated them.  Likewise, Verizon argues King's state-law claims fail because he cannot show Verizon breached any agreement with him.

    Having reviewed Verizon's moving papers and supporting evidence, King's opposition to the motion and his Complaint, as well as the record, the Court **GRANTS** Verizon's summary judgment motion on King's FDCPA and FCRA claims, and dismisses them with prejudice.  The Court declines to exercise supplemental jurisdiction over King's remaining state-law claims and remands them to New Jersey state court.

I.  BACKGROUND

   A. **The FiOS Bundle**

King had been a Verizon customer for years. In April 2011, King upgraded his existing telephone service to a FiOS "bundled" package that included FiOS telephone, internet, and high-definition television service (the FiOS Bundle). [Verizon's Statement of Undisputed Material Facts (SOMF) ¶¶ 1-2 (Docket No. 59-1).] When King upgraded to the FiOS Bundle, he agreed to "Verizon FiOS TV Terms of Service." [*Id.* ¶ 21; *see also* Decl. of Merly Friedman ¶ 14 (Friedman Decl.) (Docket No. 59-4).] Verizon's billing statements notified King that the "FiOS TV Terms of Service" governed his service with Verizon. [Friedman Decl. ¶ 6, Ex. B (September 2016 billing statement addressed to King stating, "Please note your service is governed by the Fios TV Terms of Service, found at Verizon.com/Terms.").] Those Terms of Service required King to, among other things, pay the outstanding balance "in full each month[]" and return Verizon's equipment to Verizon on termination of the FiOS Bundle service, or otherwise, Verizon would charge an equipment fee. [*Id.* ¶ 14, Ex. E, ¶¶ 9(b), 11(g); *see also* SOMF ¶¶ 23-25.]

Verizon provided the FiOS Bundle to King for about six years, and King never complained about his service or reported any billing problems to Verizon during that time. [SOMF ¶¶ 3-4, 17.] From September 2016 to May 2017, King failed to make timely payments for the FiOS Bundle. [*Id.* ¶ 5.] As a result, Verizon suspended King's FiOS Bundle service in April 2017, and "ultimately suspended and cancelled" it "in May 2017." [*Id.* ¶ 6.] After cancelling King's service, Verizon issued a billing statement to King notifying him "that he was responsible for returning the HD DVR and three HD Set-Top Boxes . . . undamaged to Verizon within 30 days or [King] would be charge for the equipment." [*Id.* ¶ 8.]

King never returned Verizon's equipment and failed to pay the remaining balance owed for the FiOS Bundle. [*Id.* ¶ 9.] In June 2017, Verizon issued King a bill totaling about $1,250 for the remaining balance owed on his account, the cost of the unreturned equipment, and taxes and fees. [*Id.* ¶ 10.] King neither paid Verizon the $1,250 nor returned the equipment. [*Id.* ¶ 11.] Verizon eventually closed King's account and reported him to a credit reporting agency. [*Id.* ¶ 12.]

### B. King's Billing Dispute with Verizon

Over a year after Verizon closed his account, King contacted Verizon claiming it billed him for services he never received. [*Id.* ¶ 13.] Verizon's records confirmed King's account was past due and he had not returned its equipment. [*Id.* ¶ 14.] King contacted Verizon again, asserting Verizon double-billed him "the entire time" he had the FiOS Bundle. [*Id.* ¶ 15.] King confirmed he had Verizon's equipment, but he would not return it until Verizon corrected the "billing issues." [*Id.*] Verizon's records reveal that King never reported "any double billing or any technical issues with Verizon's services or products during the life of [his] Account from April 2011 to May 2017." [*Id.* ¶ 17.] Verizon notified King that if he returned its equipment, Verizon could issue an adjustment on his outstanding balance. [*Id.* ¶ 18.] But King has not returned the equipment. [*Id.* ¶ 19.] "Verizon has not received any Automated Credit Dispute Verification forms . . . from any consumer credit reporting agency" about King's account with Verizon. [*Id.* ¶ 20.]

### C. King's Lawsuit

In February 2021, King sued Verizon in New Jersey state court, claiming Verizon breached its contract with him, and violated FDCPA and FCRA. [Notice of Removal ¶¶ 6-7, Ex. A (Compl.) (Docket No. 1-2).] King claims he contracted with Verizon by which Verizon

3

would "supply High Definition television" for his home. [Compl. ¶ 1.] King asserts Verizon "failed to supply its services as represented and contracted" for about four years. [*Id.*] King alleges he paid for services that Verizon never supplied, and Verizon "double billed" him. [*Id.* ¶ 2.] King also alleges that Verizon's "agents for collection" contacted him about the amounts owed, "thereby misusing the collection service." [*Id.* ¶ 3.] And he claims that Verizon "misused the credit reporting system" by wrongfully reporting him "as being in default and owing [Verizon] some $1249.00[.]" [*Id.* ¶ 4.] King asserts he learned of the negative credit reporting when he tried to obtain credit to buy a car. [*Id.*] According to King, the negative credit report has caused him "additional charges." [*Id.*] King accuses Verizon of harassment. [*Id.* ¶¶ 31-32.] He seeks statutory and emotional distress damages. [*Id.* ¶¶ 20-21, 23-24, 27-29.]

Verizon removed this action here based on federal question jurisdiction. [Notice of Removal ¶ 5.] It now moves for summary judgment. [Docket No. 59.]

## II. THE PARTIES' ARGUMENTS

Verizon argues King's breach of contract and statutory claims fail. [Verizon Mem. of Law in Supp. of Mot. for Summ. J. 9-15 (Verizon Br.) (Docket No. 59-2).] Starting with King's contract claim, Verizon argues King cannot show Verizon breached its agreement with him. [*Id.* at 9-11.] Verizon contends King never complained about service or billing issues during the six years Verizon provided the FiOS Bundle. [*Id.* at 10.] Verizon explains King first raised billing or service complaints almost a year-and-a-half after Verizon terminated his account. [*Id.*] Verizon also argues King's contract claim fails because the record shows King did not live up to his contractual obligations. [*Id.* at 10-11.] Verizon points to King's failure to make timely payments and return its equipment as the Terms of Service required. [*Id.*]

4

Given King's breach of the Terms of Service, Verizon contends King's breach of contract claim fails. [*Id.* at 11.]

Turning to King's FDCPA claim, Verizon contends that statute is inapplicable here. [*Id.* at 12-13.] Verizon contends it's not a debt collector under FDCPA. [*Id.* at 12.] Verizon asserts it is an original creditor and explains the FDCPA does not apply to original creditors trying to collect debts owed to themselves. [*Id.*] So, Verizon argues King's FDCPA claim fails as a matter of law. [*Id.* at 13.] For King's FCRA claim, Verizon asserts King can only prevail on that claim if he shows he sent a notice of disputed information on a credit report to a consumer reporting agency and that agency, in turn, sent notice to Verizon about King's dispute. [*Id.* at 13 (citing *Henderson v. Equable Ascent Fin., LLC*, 2011 WL 5429631, at *3 (D.N.J. Nov. 4, 2011)). Verizon contends the "undisputed evidence shows that Verizon never received any Automated Credit Dispute Verification forms . . . from any consumer reporting agencies[.]" [*Id.* at 14.]

Lastly, Verizon argues the Court should dismiss the rest of King's Complaint. [*Id.* at 14-15.] It contends many of King's remaining claims are for damages stemming from supposed FDCPA and FCRA violations. [*Id.*] Because those statutory claims fail, Verizon asserts King's damages claims fail too. [*Id.*] Verizon also contends King's harassment claim fails as a matter of law because New Jersey courts have not recognized it "as a free-standing civil cause of action for damages." [*Id.* at 15.]

King opposes Verizon's summary judgment motion. [King's Mem. of Law in Opp'n to Verizon's Mot. for Summ. J. 1-3 (King Opp'n Br.) (Docket No. 73).] While King does not "dispute the accuracy of the cited legal precedents and basic presentation by [Verizon,]" he argues Verizon's factual presentation is "flawed" and "incorrect[.]" [*Id.* at 1.]

5

King challenges Verizon's argument that he failed to file the required notices with the credit reporting agencies (apparently to support his FCRA claim). [*Id.*] He contends the parties' fought over those notices in discovery, arguing Verizon never provided "any communications from the credit reporting agencies[.]" [*Id.* at 2.] According to King, Verizon's position is untenable because "how could [Verizon] know there were no disputes if there were no communications from the reporting agencies." [*Id.*] King points to an excerpt from a June 2023 Equifax credit report that has a notation stating, "[c]onsumer disputes after resolution" (the Equifax Report). [*Id.*, Ex. A.] King asserts the Equifax Report shows he notified a credit reporting agency of the dispute. [*Id.*] He goes onto explain the Equifax Report contains another notation stating, "[a]ccount closed at consumer's request." [*Id.*] King asserts he never made that request so there is evidence about "accuracy issues on the reporting" and how that information "was communicated to the credit reporting agency[.]" [*Id.*]

Turning to his contract claim, King asserts "there is absolutely no proof that [he] ever received any such contract and had any knowledge of its contents." [*Id.*] King asserts Verizon never produced the contract during discovery. [*Id.*] In any event, King claims that "[i]f there is a contract issue," Verizon continues to breach it by refusing to refund him monies for services that Verizon never provided and double-billed him for.[1] [*Id.* at 3-4.]

---

[1] King also claims that "[t]here are one or more additional entities that appear to be in the chain of reporting" concerning his account with Verizon. [King Opp'n Br. at 3.] While King doesn't explicitly say so, he appears to seek leave to amend his Complaint to name "these additional entities[.]" [*Id.*] According to King, "[p]erhaps the missing communications may well be located through discovery of these entities." [*Id.*] At this late stage, the Court will not entertain a motion to amend. Courts disfavor motions to amend filed after a defendant moves for summary judgment because courts see the attempt to amend as a desperate attempt "to stave off the immediate dismissal of the case." *Jose Luis Pelaez, Inc. v. Pearson Educ., Inc.*, 2019 WL 2403088, at *2 (D.N.J. June 7, 2019) (quoting *Philips v. Borough of Keyport*, 179 F.R.D. 140, 145 (D.N.J. 1998)); *see also E.E.O.C. v. Foodcrafters Dist. Co.*, 2006 WL 489718, at *12 (D.N.J. Feb. 24, 2006) (denying plaintiffs' request to amend complaint made in opposition to defendants' summary judgment motion as untimely and futile even where plaintiffs "only recently discovery the existence" of the entities they sought to join in lawsuit). King has neither

## III. DISCUSSION

### A. Summary Judgment Standard

Courts will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might impact "the outcome of the suit under the governing law[.]" *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012). A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party. *Id*

Local Civil Rule 56.1(a) requires a party moving for summary judgment to include a statement of material facts not in dispute. A party opposing summary judgment must file "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents." *Id.* "[A]ny material not disputed shall be deemed undisputed for purposes of the summary judgment motion." *Id.* "Where . . . a party fails to respond to the movant's statement of undisputed material facts with a point-by-point indication whether the stated fact is undisputed or, if disputed, with a precise citation to the factual record where contrary evidence exists, then the Court assumes that the opponent has no evidence raising a genuine dispute with the movant's stated fact." *Grant v. Revera, Inc.*, 2014 WL 7341198, at *2 (D.N.J. Dec. 23, 2014); *see also* Fed. R. Civ. P. 56(e)(2).

---

formally moved to amend nor complied with the Federal Rules of Civil Procedure and Local Rules on amending his pleading. He has not even identified the so-called entities he seeks to join in this lawsuit, or his proposed claims against them. In any event, King apparently seeks to amend his Complaint to name these unknown entities solely for discovery. [King Opp'n Br. at 3.] If King thought these entities had relevant information, he could have issued them subpoenas long ago. King has also not requested an adjournment of this motion so he can take discovery from these entities. Thus, the Courts denies King's request to amend his Complaint.

King has not responded to Verizon's Rule 56.1 statement of facts. King's *pro se* status does not excuse him from responding to a Rule 56.1 statement. *Glazewski v. Corzine*, 2009 WL 5220168, at *1 (D.N.J. Dec. 31, 2009) ("[P]laintiff's *pro se* status does not absolve him of the requirement of filing a proper opposition."), *aff'd*, 385 F. App'x 83 (3d Cir. 2010). While the Court could treat Verizon's entire version of events undisputed, courts in this District "often relax" Rule 56.1 requirements for *pro se* litigants. *See, e.g.*, *Shuman v. Sabol*, 2011 WL 4343780, at *6 (D.N.J. Sept. 14, 2011). Thus, to decide whether summary judgment is appropriate here, the Court looks to Verizon's statement of facts, the parties' motion papers, and King's Complaint. *See, e.g.*, *Jordan v. Allgroup Wheaton*, 218 F. Supp.2d 643, 646 n.2 (D.N.J. 2002), *aff'd*, 95 F. App'x 462 (3d Cir. 2004). In doing so, the Court views the facts in King's favor and gives him the benefit of all reasonable inferences. *See, e.g.*, *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).

### B. King's FDCPA Claim Fails Because Verizon is Not a Debt Collector

The FDCPA seeks "to eliminate abusive debt collection practices by debt collectors . . . by imposing affirmative requirements on debt collectors and prohibiting a range of debt-collection practices." *Rotkiske v. Klemm*, 589 U.S. 8, 10 (2019) (citations omitted). "To prevail on an FDCPA claim, a plaintiff must prove that (1) [he] is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (quoting *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015)).

Under the FDCPA, a "debt collector" is a person: (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the

collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). So the FDCPA "provides two separate paths to establishing an entity's status as a 'debt collector.'" *Barbato v. Greystone All., LLC*, 916 F.3d 260, 265 (3d Cir. 2019). To qualify as a debt collector under the "principal purpose" path, the entity's "most important aim" must be the "collection of any debts[.]" *Id.* at 267. And the "regular collect" path "is solely applicable to a person who collects debt on behalf of 'another.'" *Stone v. JPMorgan Chase Bank, N.A.*, 415 F. Supp. 3d 628, 633 (E.D. Pa. 2019) (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 83 (2017)). "If 'the target of the lawsuit regularly seeks to collect debts for its own account,' the party does not fall under the 'regularly collects' definition of the FDCPA." *Id.* (quoting *Henson*, 582 U.S. at 83).

"Creditors—as opposed to 'debt collectors'—generally are not subject to the [FDCPA]." *Tepper v. Amos Fin., LLC*, 898 F.3d 364, 366 (3d Cir. 2018) (alteration in original) (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000)); *accord Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (explaining the FDCPA's legislative history "indicates conclusively that a debt collector does not include the consumer's creditors"). "A 'creditor' is any person: (1) 'who offers or extends credit creating a debt[;] or' (2) 'to whom a debt is owed.'" *Tepper*, 898 F.3d at 366 (alteration in original) (quoting 15 U.S.C. § 1692a(4)). A creditor qualifies as a debt collector if "in the process of collecting [its] own debts, [it] uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6).

Here, Verizon is not a debt collector under the FDCPA. *Alves v. Verizon*, 2010 WL 2989988, at *8 (D.N.J. July 27, 2010) (finding Verizon "statutorily exempt from FDCPA

liability" because Verizon is not a debt collector); *see also Alston v. Verizon Delaware LLC*, 746 F. App'x 154, 155 (3d Cir. 2019) (affirming dismissal of FDCPA claim against "Verizon Delaware" because "Verizon is a direct creditor and not a debt collector" under the FDCPA); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 41 (1st Cir. 2010) (affirming district court's grant of summary judgment and ruling that "Verizon NE does not qualify as a 'debt collector' under the [FDCPA]"). King's Complaint confirms as much: he contracted with Verizon for television services. [Compl. ¶ 1.] King's Complaint has no allegation suggesting Verizon's "most important aim" is to collect debt, *see Barbato*, 916 F.3d at 267, or that it regularly collects debt owed to another, *see* 15 U.S.C. § 1692a(6). *See also Stone*, 415 F. Supp. 3d at 632-33 (ruling defendant-bank not a debt collector under FDCPA).

While the Equifax Report's comments' section states "[c]ollection account" and provides contact information for Verizon in Weldon Spring, Missouri, *see* King Opp'n Br. at 2, Ex. A, that report does not establish Verizon tried to collect a debt by using a different name. 15 U.S.C. § 1692a(6); *see also Chiang v. Verizon New England Inc.*, 2009 WL 102707, at *6-7 (D. Mass. Jan. 13, 2009) (rejecting plaintiff's argument that "Verizon NE" became a debt collector under 15 U.S.C. § 1692a(6) by using the name "Verizon Massachusetts" to collect its own debts, and ruling "Verizon NE's use of the name 'Verizon Massachusetts' [did] not violate the FDCPA"), *aff'd*, 595 F.3d 26 (1st Cir. 2010). King's FDCPA claim thus fails, and the Court grants Verizon's summary judgment motion on that claim and any damages claim related to it.

### C. King's FCRA Claim Fails for Lack of Notice

The FRCA "create[s] a regulatory framework governing consumer credit reporting, in order 'to protect consumers from the transmission of inaccurate information about them, and

10

to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Ingram v. Experian Info. Sols., Inc.*, 83 F.4th 231, 236-37 (3d Cir. 2023) (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014)). But the FRCA largely precludes private parties from enforcing many of the law's provisions against information furnishers, leaving that task to federal agencies and state officials. *Seamans*, 744 F.3d at 864; *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011) (explaining that while the FRCA "has several provisions that create liability for violations of the Act[,] . . . [t]hese provisions . . . cannot be used by a private individual to assert a claim for a violation of § 1681s–2(a), as such claims are available only to the Government" (citations omitted)). "15 U.S.C. § 1681s–2(b) [is] the only section that can be enforced by a private citizen seeking to recover damages caused by a furnisher of information." *Eades v. Wetzel*, 841 F. App'x 489, 491 (3d Cir. 2021) (alteration in original) (quoting *SimmsParris*, 652 F.3d at 358). Section 1681s-2(b) imposes certain duties on information furnishers only after receiving a notice of dispute from a credit reporting agency (CRA). 15 U.S.C. § 1681s–2b(1) (listing duties); *see also SimmsParris*, 652 F.3d at 359.

While King hasn't specified the FCRA provision he relies on, this Court assumes it's Section 1681s-2(b) because that is the only provision he can enforce. *Id.*; *see also Franchino v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 3046318, at *3 (D.N.J. June 8, 2020) (construing *pro se* plaintiff's complaint to bring FCRA claim under Section 1681s-2(b)). To prevail on a Section 1681s-2(b) claim, King must show: "(1) [he] sent notice of disputed information to a [CRA] [per 15 U.S.C. § 1681i(a)(2)], (2) the [CRA] then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Cabrera v. Nazor*, 2024 WL 310523, at *5 (D.N.J. Jan. 25, 2024) (first and third alterations in

original) (quoting *Franchino*, 2020 WL 3046318, at *3)). "Notice under § 1681i(a)(2) must be given [to the information furnisher] by a [CRA], and cannot come directly from the consumer." *SimmsParris*, 652 F.3d at 358.

King's FCRA claim fails for several reasons. First, his Complaint lacks any allegation that he reported a dispute to a CRA. While King claims Verizon reported him to "all three major credit reporting companies[,]" *see* Compl. ¶ 17, he never alleges he sent a notice of dispute to any of those companies. That failure normally dooms a FCRA claim. *SimmsParris*, 652 F.3d at 359 (ruling district court properly granted summary judgment on FCRA claim where plaintiff did not provide notice of dispute to CRA before filing lawsuit); *see also Freeman v. Ocwen Loan Serv., LLC*, 108 F.4th 520, 526 (7th Cir. 2024) (finding district court properly dismissed FCRA claim where plaintiff's complaint failed to identify the CRAs plaintiff notified about disputed information). And his opposition to Verizon's summary judgment motion doesn't establish he sent a notice of dispute to a CRA.

Second, the Equifax Report King relies on offers little help. King points to the Report's comments section to show he notified Equifax of his dispute on the information about his Verizon account. [King Opp'n Br. at 2, Ex. A.] The Equifax Report reflects a closed Verizon account with a "Collection" status. [*Id.*] It also provides account details, such as "Balance[,]" "Amount Past Due[,]" "Date of First Delinquency[,]" "Delinquency First Reported[,]" "Date Opened[,]" and "Date Reported[.]" [*Id.*] The Report's comments section states, "Account closed at consumer's request[,] Consumer disputes after resolution[, and] Collection account[,]" and provides certain Verizon contact information. [*Id.*] The Report appears to have been generated in June 2023. [*Id.*]

Even viewing the Equifax Report in King's favor, *see Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011), it doesn't show he sent a notice of dispute to Equifax before suing Verizon for violating the FCRA. The Report's contents are vague and leaves the Court with several unanswered questions. Indeed, while the Report states "[c]onsumer disputes after resolution[,]" it does not reveal *what* information is disputed, such as the account's collection status, the amount past due, the account's balance information, or the delinquency information. And nothing in the Equifax Report reveals *how* the agency learned of the dispute or *who* notified it; Verizon, King, or another entity. *See Willis v. Capital One Corp.*, 611 F. App'x 500, 502-03 (10th Cir. 2015) (holding district court properly dismissed FCRA claim and ruling Equifax report annexed to complaint insufficient to show plaintiff notified a CRA of disputed information). Assuming King notified Equifax of his dispute with Verizon as he claims, *see* King Opp'n Br. at 2, the Equifax Report raises concerns on *when* he did. The Report appears to have been generated on June 29, 2023 and lists "June 24, 2023" as the "Date Reported." [*Id.* at 2, Ex. A.] If King notified Equifax, the Report suggests he did so more than two years after suing Verizon for violating the FCRA. [*Compare id.*, *with* Compl. (filed in state court in February 2021).] That would be fatal to his FCRA claim. *SimmsParris*, 652 F.3d at 359.

Third, and assuming King timely notified Equifax and other CRAs of his dispute, King has not created a triable issue on whether Verizon received a notice of dispute from any CRA. The Equifax Report that King clings to doesn't establish that Equifax notified Verizon of a dispute. While King claims Verizon never produced any communications from CRAs in discovery, *see* King Opp'n Br. at 2, the Court notes the Magistrate Judge denied several of King's requests for more discovery on this issue. *See King v. Verizon New Jersey, Inc.*, 2023 WL

13

5817126, at *13 (D.N.J. Sept. 6, 2023); *see also* Docket No. 72 (denying King's request for additional responses to interrogatories). King has not submitted any affidavit explaining why he cannot present facts to challenge Verizon's assertion that it never received a notice of dispute from a CRA. Fed. R. Civ. P. 56(d). If King believes communications exists between Verizon and the CRAs about his account that Verizon never produced, he could have subpoenaed the CRAs for those communications (assuming they exist). Nothing in the record suggests he did. In the end, the undisputed evidence shows Verizon never received a notice of dispute from a CRA. [SOMF ¶ 20 (citing Friedman Decl. ¶ 13).]

Verizon's obligation to investigate any of the disputed information on King's credit report never arose because it never received a notice of dispute from a CRA. *SimmsParris*, 652 F.3d at 359. Thus, King's FRCA claim fails and the Court grants Verizon's summary judgment on that claim and any damages claim relating to it. *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) (finding district court properly granted summary judgment on FCRA claim where defendants "submitted affidavits [asserting] that they did not receive any notice of dispute from a [CRA,]" and therefore, defendants "had no duty under [S]ection 1681s-2(b)(1) to conduct an investigation into disputed information and to report results to [CRAs]").

### D. The Court Declines to Exercise Supplemental Jurisdiction over King's Remaining State-Law Claims

Because King's federal claims fail, this Court loses its original jurisdiction. 28 U.S.C. § 1331. When a district court dismisses all federal claims before trial, the court "'*must* decline to decide the pendent state claims' unless 'considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for' ruling on them[.]" *Nahas v. Shore Med. Ctr.*, 828 F. App'x 89, 93 (3d Cir. 2020) (emphasis in original) (quoting *N. South*

14

*Cap. LLC v. Merck & Co.*, 938 F.3d 482, 494 n.11 (3d Cir. 2019)); *see also* 28 U.S.C. § 1367(c)(3) (allowing court to decline exercising supplemental jurisdiction over state-law claims if "court has dismissed all claims over which it has original jurisdiction"). In the absence of a federal claim conferring jurisdiction, federal courts exercise supplemental jurisdiction over state-law claims only where "extraordinary circumstances exist." *City of Pittsburgh Comm'n on Hum. Rels. v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (internal quotation marks omitted) (quoting *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195 (3d Cir. 1976)).

The Court declines to exercise supplemental jurisdiction over the remaining state-law claims in King's Complaint (breach of contract, harassment, and so on). The Court finds no affirmative justification to retain jurisdiction over this billing dispute between two New Jersey citizens. *See Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 135 (3d Cir. 2019) (affirming district court's decision declining to exercise supplemental jurisdiction over state-law claim after granting summary judgment on federal claim); *see also Nazarov v. City of Brigantine*, 2024 WL 3159513, at *11 (D.N.J. June 25, 2024) (declining to exercise supplemental jurisdiction over plaintiffs' state-law claims after granting summary judgment in defendants favor on all federal claims).

Because Verizon removed this case from New Jersey state court, *see* Docket No. 1, the Court finds remanding King's remaining state-law claims is appropriate rather than dismissing them without prejudice. *See, e.g., Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("While § 1367(c) does not specify what disposition the district court is to make of state claims it decides not to hear, . . . we believe that in a case that has been removed from a state court, a remand to that court is a viable alternative to a dismissal without prejudice."); *see also Alston*, 746 F. App'x at 155 (affirming district court's order remanding

15

plaintiff's state-law claims against Verizon to state court after dismissing FDCPA claim). So the Court remands King's remaining state-law claims to New Jersey state court.

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Verizon's summary judgment motion on all federal claims in King's Complaint (Docket No. 59), and **REMANDS** King's remaining state-law claims to New Jersey state court.

An accompanying Order of today's date shall issue.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

Dated: August 27, 2024